IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| James Edward Gomeringer, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>John Pack, )<br>)<br>Defendant. )<br>) | Civil Action No. 6:15-1048-TMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion for summary judgment (doc. 70). Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civ. Rule 73.02(B)(2)(e) (D.S.C.), all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

## PROCEDURAL HISTORY

The plaintiff, who is proceeding *pro se*, filed a complaint on March 4, 2015, alleging, "John Pack owner of Magnolia Property Management using his agent Resident Research did with out any proper authorization, permission on my part and/or legitimate reason 'pull' my credit report on or about 12/30/14" (doc. 1 at 3). The plaintiff alleges that "[t]his is part of long running litigation 'battle' where [the defendant] has repeatedly lied, perjured, and slandered me" (*id.*). As relief, the plaintiff states he "want[s] justice that I can't get in the magistrate's court" (*id.* at 5). The plaintiff states that "these magistrates aren't very bright. 'Wasn't a preponderance of evidence to show he violated his contract.' It's being appealed." He asks that the defendant be "found guilty of what he did, 1K fine, and as huge a punitive damage amount as [the court] feel[s] is fair" (*id.*). The plaintiff states that he "fired" the defendant "after he put inferior tenants in a property. [The defendant] responded by trying to extort money from me, then taking it (money) from the security deposit, claiming it was for expenses, then later in court that it was for an inspection" (*id.* at 3). The plaintiff claims the defendant "lashed out" at him by pulling his credit report

because the plaintiff wrote a bad review of the defendant on a website (*id.* at 3-4). The complaint has been construed as raising a cause of action under the Fair Credit Reporting Act ("FCRA").

On September 2, 2015, the Honorable Timothy M. Cain, United States District Judge, adopted the undersigned's recommendation that the defendant's motion to dismiss for failure to state a claim be granted as to negligent violation of the FCRA and be denied as to willful violation of the FCRA (doc. 44). On February 5, 2016, the defendant filed the instant motion seeking summary judgment on the remaining willful violation claim (doc. 70). On February 5, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately (doc. 72). The plaintiff filed his response in opposition (doc. 76) on March 3, 2016, and the defendant filed a reply on March 8, 2016 (doc. 78). On March 17, 2016, the plaintiff filed a letter to the court with an attachment (doc. 80).

## **FACTS PRESENTED**

In support of the motion for summary judgment, the defendant submitted documents showing that, on or about January 8, 2014, the plaintiff hired the defendant's company, Magnolia Property Management ("Magnolia"), to manage a rental house that the plaintiff owned (doc. 70-2, prop. mgmt. contract).

On May 19, 2014, the plaintiff filed a complaint against the defendant in Spartanburg County Magistrate Court, alleging that the defendant "acted irresponsibility [and] was negligent and incompetent in his duties as property manager in charge [and] that he mishandled funds and caused undue financial hardship, mental stress and additional needed labor to repair to undo the mess he created" (doc. 70-3, mag. ct. comp.). The defendant denied these allegations and counterclaimed that the complaint was frivolous. A bench trial was held on August 11, 2014. During the bench trial, both the plaintiff and the defendant testified, as well as Nick Tremaine, the property manager for Magnolia. The magistrate found that the plaintiff "failed to prove by a preponderance of evidence that [the] contract had been breached" by the defendant. The magistrate also found that the

defendant was "not entitled to damages on his counterclaim" (doc. 70-4 at 2, state order). The plaintiff appealed this decision to the Court of Common Pleas, asserting "I really don't understand where the magistrate's [sic] 'coming from' [sic]! There is clearly gross negligence and gross misconduct . . ." (*id.*). The plaintiff notified the defendant of this appeal via a certified letter addressed "John Asshole Pack." In this letter, the plaintiff stated: "Scumbag, this is to inform you that an appeal has been submitted concerning case # 4136. Maybe you'll learn something about integrity and/or the lack of it from all this!" (doc. 70-5, pl. letter re: appeal).[1]

On November 18, 2014, while the plaintiff's appeal was pending, he wrote several reviews about the defendant and his property management business on the service network thumbtack.com. The defendant responded to these allegations on November 23, 2014, and December 15, 2014 (doc. 70-6, pl. reviews & def. resp.).

During this same time frame, the plaintiff called the defendant's office and spoke with the defendant's mother-in-law, Sherry Stone, who had been employed since October 2014 as the office manager for Magnolia. During this call, the plaintiff was loud, boisterous, and angry, yelling at Ms. Stone for her to send him a copy of the lease Magnolia previously had with the tenants of his rental property. According to Ms. Stone, the plaintiff's file was already closed, and she did not have a copy to give to the plaintiff (doc. 70-7, Stone aff. ¶¶ 2-3).

During the 2014 Christmas holidays, Ms. Stone went to the defendant's house for a Christmas dinner. During this family gathering, the plaintiff called and spoke with the defendant, demanding a copy of the lease Magnolia previously had with the tenants renting his house. This conversation became heated, and Ms. Stone could hear the plaintiff yelling at the defendant (*id.* ¶ 5; doc. 70-8, def. aff. ¶ 9).

---

[1]On June 29, 2015, the Honorable J. Mark Hayes, II, Circuit Court Judge, issued an order in the plaintiff's appeal (doc. 70-4, state order). Judge Hayes affirmed the magistrate's decision except as to one issue, the tenant's $150 credit for the month of April (*id.* at 3-4). Judge Hayes remanded the case back to the magistrate to determine if $150 was owed to the tenant, the plaintiff, or the defendant for work performed (*id.* at 4).

When Ms. Stone returned to work after the Christmas holidays, she decided to run a criminal background check on the plaintiff. According to Ms. Stone, she decided to run this check on the plaintiff to see if he had a history of violence because she feared him and thought he might act out in violence based upon his dispute with the defendant. When Ms. Stone ran the background check on December 30, 2014, she had no idea that such required the plaintiff's consent (doc. 70-7, Stone aff. ¶¶ 6-10). Ms. Stone further states that she did not know that the plaintiff's credit report would be provided along with the criminal background check (*id.* ¶ 9). Ms. Stone states that she does not remember seeing any warning alerting her that the background check required the consent of the person she was searching, and she had never heard of the FCRA prior to this case (*id.* ¶¶ 8, 11). The defendant submitted an affidavit stating that he did not perform the background check that is the subject of this lawsuit, his mother-in-law used his account provided by Resident Research to run the background check, and he is fully aware that it is illegal to do so without the individual's permission (doc. 70-8, def. aff. ¶¶ 10-12).

In his response to the motion for summary judgment, the plaintiff claims that he has evidence that the defendant's story has changed; the defendant first said that his company did not pull the plaintiff's credit report, and now the defendant says that the plaintiff "scared someone into accidentally pulling [his] credit report" (doc. 76 at 2). The plaintiff references a compact disc recording of a telephone conversation between the defendant and himself in December 2014, when he requested that the defendant send him a copy of the lease that Magnolia previously had with the tenants renting the plaintiff's property (*id.* at 2-3). The plaintiff submitted a copy of this recording as an exhibit to his response and provided a copy to defense counsel (*see* docs. 77, 78-1). The undersigned has listened to the recording and finds that the summary provided by the defendant in his reply (doc. 78 at 1) is accurate:

> 00.27 Defendant: Jim why would we send you a lease of something that happened . . .
>
> 00.46 Plaintiff: There is no "whys" about it.

> 01:01 Plaintiff: If you don't you're going to wind up in trouble. It's that simple.
>
> 01:28 Defendant: Don't call me back again. I am tired of it.
>
> 01:33 Plaintiff: Well you want to hear from an attorney then? I'll have an attorney call you then.
>
> 01:40 Defendant: Keep wasting your damn money Jim over and over and your time. I'm tired of it.
>
> 01:53 Plaintiff: The best is yet to come. You're going to wind up in court a little more.

The plaintiff argues in his response that the defendant "did run [the] credit report himself. He has already been found willful. If the defense had a problem with that, they had a chance to appeal it, and it has passed" (doc. 76 at 2-3). The plaintiff further states that he does not recall ever speaking to the defendant's wife (*id.* at 3). He does not state whether he remembers speaking with the defendant's mother-in-law, Ms. Stone. The remainder of the plaintiff's response consists of the plaintiff's description of the events leading to the end of the management agreement between the plaintiff and Magnolia; a litany of accusations and name-calling against the defendant and his attorney; the criminal charges that he requests be brought against the defendant, his attorney, and Ms. Stone; and the plaintiff's beliefs regarding the "awful people" and "incompetent and bias [sic] jurists, police, tenants, handymen, ect. [sic]" with whom he has come into contact in South Carolina (*id.* at 2-7).[2]

In support of his response, the plaintiff submitted[3] a copy of a letter to the plaintiff from Resident Research, which the plaintiff referenced in his complaint as the

---

[2]The undersigned has reminded the plaintiff in two previous orders (doc. 65 at 3; doc. 74 at 2-3) that his signature on a filing in this court is a certification that, among other things, "it is not being presented for any improper purpose, such as to harass . . ." Fed. R. Civ. P. 11(b)(1). The undersigned has also cautioned the plaintiff to refrain from filing documents that are frivolous, vexatious, or harassing (doc. 74 at 3).

[3]The plaintiff also submitted several other documents that are not relevant to the issue before the court (*see* doc. 76-1).

defendant's "agent" that provided the credit report at issue (*see* doc. 1 at 3). The letter states that, on December 30, 2015[4], "Johnny Pack of Magnolia Rental Property Management, LLC ordered the basic package of credit, criminal and eviction report" on the plaintiff. As a result of a dispute filed by the plaintiff, the letter states that Resident Research investigated and found that the defendant "violated the terms of the end user agreement that he signed to obtain" the services of Resident Research. Accordingly, Resident Research notified TransUnion, which was the credit bureau it used, of the violation, and Resident Research deactivated Magnolia's account (doc. 76-1 at 4).

        As noted above, on March 17, 2016, the plaintiff filed a letter and attachment. The letter consists of accusations and name-calling against the defendant, his attorney, and a woman the plaintiff hired as a replacement property manager for his rental property (doc. 80). The attachment is identified by the plaintiff as a letter the defendant wrote to the Better Business Bureau regarding the plaintiff's complaint (doc. 80-1). Neither of these documents contain any information or evidence relevant to the issue before the court.

        In his reply to the plaintiff's response in opposition to summary judgment, the defendant notes that the plaintiff has repeatedly threatened criminal charges in this civil matter (doc. 78 at 2). The defendant submitted a copy of the envelope in which the plaintiff mailed a copy of the compact disc discussed above to defense counsel. The address shows defense counsel's name followed by "Sellout Attorney (Hopefully, soon to be state prisoner)," and the back of the envelope has the following handwritten message, "Whoops, got caught in a lie that may send you all to prison" (doc. 78-1). The defendant requests that the court sanction the plaintiff under Federal Rule of Civil Procedure 11 because he continues to file documents for an improper purpose to include threatening both the defendant and defense counsel (doc. 78 at 2).

---

[4]The date is obviously a typographical error as the relevant events occurred in 2014.

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Congress enacted the Fair Credit Reporting Act ("FCRA") to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, insurance, and other information in a manner that is fair and equitable to the consumer." 15 U.S.C. § 1681(b). The FCRA allows access to a "consumer

report" only for specified permissible purposes. *Cappetta v. GS Servs. Ltd. P'ship*, 654 F.Supp.2d 453, 457 (E.D. Va. 2009). The FCRA defines a "consumer report" as:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for–
>
> > (A) credit or insurance to be used primarily for personal, family, or household purposes;
> > (B) employment purposes; or
> > (C) any other purpose authorized under section 1681b of this title.

15 U.S.C. § 1681a(d)(1). Under the FCRA, a credit reporting agency may provide a consumer report:

> To a person which it has reason to believe - (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; or (B) intends to use the information for employment purposes; or (C) intends to use the information in connection with the underwriting of insurance involving the consumer; or (D) intends to use the information in connection with a determination of the consumer's eligibility for a license or other benefit granted by a governmental instrumentality . . . ; or (E) intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks . . . ; or (F) otherwise has a legitimate business need for the information - (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account. . . .

15 U.S.C. § 1681b(a)(3). The statute mandates that "[a] person shall not use or obtain a consumer report for any purpose unless – (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified . . . by a prospective user of the report through a general or specific certification." *Id.* § 1681b(f). The FCRA imposes civil liability on any "person," which

8

includes any individual, corporation, or other entity, who willfully or negligently fails to "comply with any requirement imposed" under the FCRA. *See id.* §§ 1681a(b), 1681n, and 1681o.

Here, as set out above, only a claim for willful violation of the FCRA is at issue.[5] The plaintiff is mistaken when he states that the defendant "has already been found willful" (doc. 76 at 2).[6] The defendant's motion to dismiss was denied as to the willful violation claim because the plaintiff *alleged* sufficient facts in his complaint to state a claim under Rule 12(b)(6) (*see* doc. 39 at 6-7; doc. 44 at 1-2). On a summary judgment motion under Rule 56, the plaintiff must *demonstrate* that specific, material facts exist that give rise to a genuine issue. *Celotex,* 477 U.S. at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. "To prove willfulness under the [FCRA, the plaintiff] must 'show that the defendant knowingly and intentionally committed an act in conscious disregard for the rights of the consumer.'" *Ausherman v. Bank of Am. Corp*., 352 F.3d 896, 900 (4th Cir. 2003) (quoting *Dalton v. Capital Associated Indus*., 257 F.3d 409, 418 (4th Cir. 2001)). "[W]llful violations of [the] FCRA include violations committed in reckless disregard of a company's obligations under [the] FCRA." *Saunders v. Branch Banking and Trust Co. of VA*, 526 F.3d 142, 151 n.4 (4th Cir. 2008) (citing *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 56-60 (2007)).*See also Lagrassa v. Jack Gaughen, LLC*, C.A. No. 09-0770, 2011 WL 1257384, at *5 (M.D.Pa. Mar. 11, 2011) (stating that "a violation of the FCRA by itself does not amount to willful noncompliance with the FCRA . . . the evidence submitted by [the defendant] supports a finding that there were procedures

---

[5]The motion to dismiss the plaintiff's claim for negligent violation of the FCRA was granted because the plaintiff failed to allege any actual injury in his complaint (*see* doc. 39 at 6; doc. 44 at 1-2). "When the violation is negligent, the plaintiff must include facts from which the court can infer actual damages." *Romanello v. Capital One Bank (USA*), C.A. No. 5:14-cv-177-FL, 2014 WL 6666900, at *3 (citations omitted).

[6]The plaintiff is also wrong when he states, "[The court] decided that he wasn't negligent, . . . but he was wilful" (doc. 76 at 1).

9

in place to ensure FCRA compliance, and that this incident was likely a mistake. Such an error, at best, amounts to negligence, not a knowing, intentional or reckless violation of the FCRA.").

The evidence presented does not raise an issue of material fact as to whether the defendant committed a willful violation of the FCRA. First, the affidavits of Ms. Stone and the defendant establish that Ms. Stone ran the background check rather than the defendant. The *only* relevant evidence submitted by the plaintiff is the letter to the plaintiff from Resident Research, which states that the defendant "ordered the basic package of credit, criminal and eviction report" on the plaintiff (doc. 76-1 at 4). However, the defendant's undisputed evidence shows that Ms. Stone used the defendant's account with Resident Research to run the background check (doc. 70-8, def. aff. ¶ 10; doc. 70-7, Stone aff. ¶ 7). Second, the evidence before the court is that when Ms. Stone, who was newly employed at Magnolia, ran the background check, she did so out of fear. The evidence is also undisputed that Ms. Stone was unaware of the legal precautions required. The plaintiff has presented no evidence that the defendant – or any of his employees – obtained the consumer report in an effort to get back at the plaintiff for writing a negative review on thumbtack.com, as the plaintiff alleged in his complaint (*see* doc. 1 at 3). The evidence before the court supports a finding that the defendant has procedures in place to ensure FCRA compliance. The defendant has all of his tenants sign a consent form in order for him to run a credit check (doc. 70-8, def. aff. ¶ 11; doc. 70-9 at 4), and the defendant personally signed the documentation provided by Resident Research that warns of the FCRA's requirements (doc. 70-10). This incident – at best – amounts to negligence on the defendant's part in failing to properly inform Ms. Stone of the legal parameters involved in obtaining a consumer report, and not a knowing, intentional, or reckless violation of the FCRA. *See Lagrassa*, 2011 WL 1257384, at *5. As the plaintiff has failed to produce any evidence whatsoever of the defendant's willful violation of the FCRA, summary judgment is appropriate. *See Ausherman*, 352 F.3d at 900.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the defendant's motion for summary judgment (doc. 70) should be granted. The undersigned further recommends that the defendant's request for Rule 11 sanctions be denied.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

March 17, 2016
Greenville, South Carolina